# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GENE STILP,** | : | **CIVIL ACTION NO. 1:09-CV-0524** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN J. CONTINO** | : | |
| **and THOMAS W. CORBETT, JR.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court is a motion (Doc. 2) for preliminary injunction filed by plaintiff Gene Stilp ("Stilp"). Stilp seeks to enjoin enforcement of § 1108(k) of the Public Official and Employee Ethics Act, 65 PA. CONS. STAT. § 1108(k), which prohibits disclosure by any person of information relating to an ethics complaint, preliminary inquiry, investigation, hearing, or petition for reconsideration that is pending before the Pennsylvania State Ethics Commission. The court held an evidentiary hearing on the motion on April 1, 2009,[1] after which the parties submitted additional briefing, (<u>see</u> Docs. 18, 20). For the reasons that follow, the motion for preliminary injunction will be granted in part and denied in part.[2]

---

[1] Citations to the exhibits introduced into evidence at the April 1, 2009 hearing are abbreviated throughout as "Hr'g Ex. ____."

[2] The following discussion shall constitute the court's findings of fact, <u>see</u> <u>infra</u> Part I, and conclusions of law, <u>see</u> <u>infra</u> Part II, for purposes of Rule 52(a)(2) of the Federal Rules of Civil Procedure.

# I. Factual Background

The Pennsylvania State Ethics Commission ("Commission") is an independent state agency responsible for administration and enforcement of the Public Official and Employee Ethics Act ("Act"). (Doc. 16 at 30.) The Act regulates financial conflicts of interest among public officials at the state and local level. (Id.) Defendant John Contino ("Contino") is the Commission's executive director. (Id. at 29.) He oversees the Commission's enforcement division, which investigates Act violations and ensures that public officials comply with the Act's various financial disclosure requirements. (Id. at 31-33.) Defendant Thomas Corbett, Jr., is Attorney General of the Commonwealth of Pennsylvania. The Attorney General's office is ultimately responsible for criminal enforcement of the Act.[3] (Id. at 80-81.)

## A. Commission Investigations & Section 1108(k)

In 1978, the Pennsylvania state legislature created the Commission to police financial conflicts of interest that invariably arise to seduce those officials with whom the public places its trust. (See id. at 30); see also 65 Pa. Cons. Stat. § 1101.1 ("The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust."). Ethical misconduct investigations are initiated by one of two methods under the Act: (1) a private

---

[3] The Commission has no criminal enforcement jurisdiction. Instead, it must refer to the Attorney General conduct that it believes to be violative of the Act. (See Doc. 16 at 80-81.)

citizen may file a signed complaint with the Commission under penalty of perjury, or (2) the Commission may commence an investigation upon its own motion. (See Doc. 16 at 33); see also § 1108(a). There are three distinct phases to a Commission investigation. In the first, the Commission preliminarily reviews the complaint to ensure that allegations contained therein are sufficiently detailed to warrant further inquiry.[4] (See Doc. 16 at 34.) Complaints that fail to meet the threshold requirements are summarily dismissed. (See id. at 62-63.) Satisfaction of the threshold criteria requires the Commission to open a "probable cause period," during which it attempts to gather evidence concerning the allegations. (Id. at 36); see also § 1108(a). If the Commission uncovers probable cause of an ethics violation, a full investigation follows. (Doc. 16 at 36.); see also § 1108(c). In 2008, the Commission received 470 complaints; over 400 were summarily dismissed, seventy-five proceeded to a probable cause period, and the Commission initiated a full investigation in only forty cases. (Doc. 16 at 63.) As Contino explained, "by far the majority of complaints that come in the door do not even meet the threshold requirements." (Id.)

Strict confidentiality provisions govern all stages of the Commission's investigative process. Section 1108(k) of the Act states that "no person shall disclose or acknowledge to any other person any information relating to a

---

[4] Contino testified that the purpose of the preliminary screening is to make certain that "the actual course of conduct [described in the complaint] is [not] something that [would cause] us to go on a fishing expedition with no background and no basis to support it." (Doc. 16 at 35.)

3

complaint, preliminary investigation, hearing or petition for reconsideration which is before the commission." This provision prohibits, *inter alia*, disclosure of the fact that an ethics complaint has been or will be filed with the Commission.[5, 6] (Doc. 16 at 45, 64, 67-69; see also Pl. Hr'g Ex. 4.) The Act's prohibition on disclosure remains in effect during the pendency of the Commission's investigation. § 1108(k). According to Contino, however, § 1108(k) does not bar a complainant from publicizing the substantive allegations underlying his or her complaint as long as there is no reference to initiation of an ethics inquiry. (See Doc. 16 at 45.)

Eight exceptions to the confidentiality provision are set forth in the Act, permitting disclosure when: (1) the Commission has issued a final order, (2) the Commission conducts a public hearing on the matter, (3) a complainant is seeking the advice of counsel, (4) a complainant is appealing from a Commission order, (5) the purpose of the disclosure is to communicate with Commission staff in furtherance of an investigation, (6) a complainant is consulting with or responding

---

[5] No evidence was presented regarding disclosure of information relating to a preliminary investigation, hearing, or petition for reconsideration that is pending before the Commission. Therefore, the court will not address these aspects of § 1108(k); the accompanying preliminary injunction order is tailored accordingly.

[6] In 1998, the Commission authored an opinion stating that § 1108(k) "makes it clear that a violation can occur even if the complaint is received at the Commission after public disclosure is made." (Pl. Hr'g Ex. 4 at 13 (reproducing Commission opinion captioned In re Clarence Rittenbaugh, No. 97-019-C2)). In that case, a private citizen informed a newspaper reporter that he intended to file an ethics complaint against a public official. (See id.) He then filed the complaint and was prosecuted by the Commission for violating the Act's confidentiality provision. (See id.)

to a request from law enforcement officials, (7) a complainant is testifying under oath before a governmental body, and (8) the subject of the complaint discloses the information. § 1108(k)(1)-(8).[7] Violation of § 1108(k) is a crime punishable by a fine of not more than $1000 and a period of imprisonment no greater than one year. § 1109(e).

## B. Stilp's Conduct

Stilp is a private citizen who describes himself as "one of the leading critics of the [Pennsylvania] state legislature." (Doc. 16 at 7.) For the past several years, he has organized demonstrations protesting what he characterizes as government waste, and has initiated multiple lawsuits challenging legislative activities.[8] (Id. at 5-8.) In November 2007, Stilp became aware of allegations that Representative William DeWeese's[9] office was improperly using state tax revenues to fund political polling projects. (See id. at 9.) Concluding that these allegations were "something

---

[7] Section 1108(k)(9) authorizes the Commission to promulgate regulations governing disclosure in addition to those appearing in the statute. Accordingly, the Commission permits disclosure of the fact of filing in the following circumstances: (1) "The publication or broadcast of information legally obtained by the news media regarding a confidential Commission proceeding"; and (2) "The divulgence by individuals who are interviewees or witnesses as to confidential Commission proceedings regarding information that was already in their possession or the disclosure of their own statements." 51 PA. CODE § 21.6(a)(9)-(10).

[8] Stilp's most notable legal challenge questioned the constitutionality of legislation that increased salaries for members of the General Assembly, the state judiciary, and certain high-ranking executive officials. See Stilp v. Commonwealth, 905 A.2d 918 (Pa. 2006).

[9] In 2007, Representative DeWeese was majority leader in the Pennsylvania House of Representatives. (See Doc. 16 at 9.)

5

the ethics commission should investigate," Stilp completed a form complaint, wherein he demanded an inquiry into the purported misconduct.[10] (See id. at 9-12; Pl. Hr'g Ex. 1.) Before he filed the complaint, however, Stilp issued a press release headlined, "STATE ETHICS COMMISSION WILL BE ASKED TO INVESTIGATE POLITICAL NATURE OF $290,000 POLLING CONTRACT." (See Doc. 16 at 12-14; Pl. Hr'g Ex. 1.) A copy of Stilp's signed, notarized, but unfiled complaint was attached to the press release. (See Pl. Hr'g Ex. 1.) Hours after issuing the release, Stilp formally filed his complaint with the Commission. (Doc. 16 at 14.)

The Commission sent a letter to Stilp the following day, indicating that the complaint "failed to provide sufficient specific information to make a determination as to whether or not this matter should be pursued as an investigation." (Pl. Hr'g Ex. 2.) The letter further explained that the complaint "failed to identify a specific

_____

[10] In pertinent part, the complaint stated, "This is a complaint against a practice used by the House Democratic Caucus involving the use of polling contracts that are paid for using Pennsylvania State taxpayer funds. In news articles, it has been revealed that polling data may involve political uses. The contracts involved a total of $290,000. The investigative article from the Philadelphia Inquirer is attached. Please review the article for your investigation. This complaint does not know who signed the contracts for the polling because it has recently been discovered that certain contracts in the House Democratic caucus may have been signed by others in the name of the Democratic leader. It cannot be said who signed for whom on the contract. It is clear that certain polling data is political in nature. It is clear that taxpayer funds were used for this contract. It is clear that someone in the House Democratic Caucus signed the contract. It is clear that you have the resources to investigate this matter. It is clear that individual taxpayers cannot ask for an advisory opinion from the Pennsylvania State Ethics Commission. It is clear that actions in regard to use of taxpayers funds for political purposes falls clearly in investigate [sic] path and mission of the Pennsylvania State Ethics Commission." (Pl. Hr'g Ex. 1.)

individual about whom [Stilp] was complaining." (Id.) As a result, the Commission summarily dismissed Stilp's complaint approximately twenty-four hours after it was filed. (Id.)

On January 31, 2008, Stilp received a letter from Contino on behalf of the Commission. (Pl. Hr'g Ex. 3.) This correspondence stated that the Commission was commencing an investigation into Stilp's disclosure to the media that he intended to file the November 2007 complaint against Representative DeWeese.[11] (Id.) The letter described criminal penalties applicable to Stilp's conduct, indicated that the Commission may issue subpoenas to compel witness attendance and document production, and advised that representation by counsel was appropriate. (See id.) The Commission thereafter began its investigation, which continued through October 2008. (See id.; see also Doc. 16 at 19-21.)

On October 16, 2008, Stilp entered into a consent decree with the Commission, under the terms of which he admitted to violating § 1108(k) of the Act and acceded to pay a $500 fine. (Pl. Hr'g Ex. 5.) The Commission agreed to forego additional criminal sanctions. (See id.) In its final order concluding the investigation, the Commission explained:

---

[11] The January 31 letter also stated that the Commission was investigating Stilp for violations of § 1110(a)(1) and § 1110(a)(2) of the Act. Section 1110(a)(1) prohibits a complainant from filing a frivolous complaint. Section 1110(a)(2) prohibits a complainant from publicly disclosing the fact that he or she has filed a complaint. Neither of these sections are the subject of Stilp's motion (Doc. 2) for preliminary injunction.

[Stilp] believed that distributing the complaint prior to [its] filing . . . would not breach the confidentiality provisions of the Ethics Act. However, we have held that the prohibition of Section 1108(k) of the Ethics Act encompasses a complaint that <u>will</u> <u>be</u> pending before this Commission. . . . Accordingly, we hold that a violation of Section 1108(k) of the Ethics Act occurred when [Stilp] disclosed or acknowledged to other persons information relating to a complaint he was filing or filed against a public official with the Commission."

(<u>Id.</u> (emphasis in original)).  Stilp complied with the terms of the decree, but has expressed the desire to file one or more complaints with the Commission in the future, and to disclose publicly his filing thereof.  (<u>See</u> Doc. 16 at 25-27.)  Stilp explained that he is wary of pursuing this course of conduct, however, "because of the ethics commission reaction if I was to publicize [the complaint] before I filed." (<u>Id.</u> at 26.)

### C.  <u>Procedural History</u>

On March 20, 2009, Stilp commenced the instant action by filing a complaint and moving for a preliminary injunction.  (<u>See</u> Docs. 1, 2.)  Stilp claims that § 1108(k) of the Act violates the First Amendment on its face and as applied to the above-described circumstances.  The court heard testimony and received evidence on the motion for preliminary injunction on April 1, 2009, (<u>see</u> Doc. 16), and supplemental briefing followed, (<u>see</u> Docs. 18, 20).  The motion has now been fully briefed and is ripe for disposition.

## II.  <u>Discussion</u>

The requirements for preliminary injunctive relief are well settled.  The moving party must establish that:  (1) there is a reasonable probability of success on

the merits, (2) irreparable injury will result without injunctive relief, (3) granting the injunction will not result in even greater harm to the nonmovant, and (4) the injunction is in the public interest.  See Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006); P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005) (explaining that the burden of demonstrating each element falls upon the movant); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chamberlain, 145 F. Supp. 2d 621, 625 (M.D. Pa. 2001).  Although each factor need not be established beyond doubt, they must combine to show the immediate necessity of injunctive relief.  See Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002); see also Walgreen Co. v. Sara Creek Prop. Co., 966 F.2d 273, 275-79 (7th Cir. 1992); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.3 (2d ed. 1995).

## A.  Reasonable Probability of Success on the Merits

To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action.  See Punnett v. Carter, 621 F.2d 578, 582-83 (3d Cir. 1980); McCahon v. Pa. Tpk. Comm'n, 491 F. Supp. 2d 522, 527 (M.D. Pa. 2007). Whether success is likely requires examination of legal principles controlling the claim and potential defenses available to the opposing party.  See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 264 (3d Cir. 2000).  The mere possibility that the claim might be defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of

action.  Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 173 (3d Cir. 2001)

(citing 11A WRIGHT ET AL., supra § 2948.3).  In the context of a First Amendment

challenge, "[t]he most significant and, indeed, the dispositive prong of the

preliminary injunction analysis . . . is whether the plaintiffs bore their burden of

establishing that they had a reasonable probability of succeeding on the

merits . . . ."  ACLU v. Ashcroft, 322 F.3d 240, 250-51 (3d Cir. 2003); see also ACLU v.

Reno, 217 F.3d 162, 180 (3d Cir. 2000) (holding that a plaintiff that establishes a

reasonable probability of succeeding on the merits of a First Amendment claim will

"almost certainly" suffer irreparable injury, and that "[c]urtailing constitutionally

protected speech will not advance the public interest"), vacated on other grounds

sub nom., Ashcroft v. ACLU, 533 U.S. 973 (2001).

Stilp alleges that his First Amendment right to speech was unconstitutionally

infringed, a claim that is actionable against defendants pursuant to 42 U.S.C. § 1983.

Section 1983 affords an entitlement to relief where official action deprives an

individual of his or her First Amendment rights.  See Monell v. Dep't of Soc. Servs.,

436 U.S. 658, 690 (1978); see also Burnett v. Graham, 468 U.S. 42, 43-48 (1984)

(assuming applicability of § 1983 as remedy for contravention of constitutionally

protected speech).  To enjoin application of an unconstitutional state statute under

§ 1983, a plaintiff must bring suit against those officials charged with enforcement

of the contested measure.  See Kentucky v. Graham, 473 U.S. 159, 166-67 & n.14

(1985); Ex Parte Young, 209 U.S. 123, 153-61 (1908).  Accordingly, Stilp identifies

Contino and Corbett as responsible for enforcement of § 1108(k) of the Act, and he

seeks injunctive relief to conform defendants' official conduct to the contours of the First Amendment.

The First Amendment prohibits government from "abridging the freedom of speech." U.S. CONST. amend. I. An individual's publication of information regarding alleged governmental misconduct is speech "that has traditionally been recognized as lying at the core of the First Amendment." Butterworth v. Smith, 494 U.S. 624, 632 (1990). As the Supreme Court explained in New York Times Co. v. Sullivan, ours is a country with "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and . . . it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. 254, 270 (1964). Consequently, executive or legislative branch efforts to prohibit criticism of public officials must be approached with great skepticism.

Government restrictions on speech "based on its content are 'presumptively invalid' and subject to strict scrutiny." Ysursa v. Pocatello Educ. Ass'n, --- U.S. ---, 129 S. Ct. 1093, 1098 (2009) (quoting Davenport v. Wash. Educ. Ass'n, 551 U.S. 177, 188 (2007)). Strict scrutiny requires that the contested speech restriction is "narrowly tailored to serve a compelling government interest." Pleasant Grove City v. Summum, --- U.S. ---, 129 S. Ct. 1125, 1132 (2009); Ashcroft, 322 F.3d at 251 ("Strict scrutiny requires that a statute (1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest."). In the matter *sub judice*, the

challenged provision—§ 1108(k) of the Act—penalizes an individual based upon the

content of his or her speech; in particular, an individual is subject to prosecution

based on whether he or she discloses that a complaint has been or will be filed.

Therefore, strict scrutiny is appropriate.[12]

---

[12] The parties agree that § 1108(k) represents a content-based restriction on speech deserving of strict scrutiny. (See Doc. 3 at 10-11; Doc. 18 at 6.) Stilp contends that the provision constitutes a prior restraint, a characterization typically used to "describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur," Alexander v. United States, 509 U.S. 544, 550 (1993) (quoting M. NIMMER, NIMMER ON FREEDOM OF SPEECH § 4.03, p. 4-14 (1984)). Temporary restraining orders and permanent injunctions are classic examples of prior restraints on speech. See id. A similar, yet distinct constraint on speech is a rule or regulation that imposes a criminal penalty *subsequent* to the prohibited speech. See Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 552-58 (1993). The Supreme Court has described the difference between a prior restraint and a subsequent penal sanction thusly: "A criminal penalty . . . is subject to the whole panoply of protections afforded by deterring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative. A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." Neb. Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976).

The court finds that § 1108(k) of the Act constitutes a subsequent penal sanction rather than a prior restraint. It is only after an individual breaches the confidentiality provision of § 1108(k) that the Commission commences an investigation and, if necessary, conducts a hearing on the breach. See § 1108. Throughout this process, the accused may be represented by counsel, and an adverse decision is appealable to the Pennsylvania state courts. See id. Characterizing § 1108(k) as a subsequent penal statute also squares with the classification applied by other tribunals reviewing the constitutionality of similar confidentiality provisions under the First Amendment. See, e.g., Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 838 (1978) (holding that the confidentiality statute applicable to proceedings before the Virginia Judicial Inquiry and Review Board did "not constitute a prior restraint"); Providence Journal Co. v. Newton, 723 F. Supp. 846, 854 (D.R.I. 1989) (holding that confidentiality provision contained in state ethics law did not constitute a prior restraint because "it does not in principle,

Defendants acknowledge that § 1108(k) restricts speech critical of

government officials, (see Doc. 18 at 6-7), but they claim that the confidentiality

provision is narrowly tailored to effectuate important state interests.  After all,

§ 1108(k) prohibits a complainant not from trumpeting allegations that a public

official is responsible for violations of Pennsylvania's ethics laws, but from

publicizing the fact that he or she filed a complaint with the Commission requesting

an investigation into such conduct.  According to defendants, this prohibition on

disclosure is necessary to empower the Commission to wade through a myriad of

ethical conundrums unimpeded by the swift current of the media.

Defendants proffer six governmental justifications in support of § 1108(k).

The confidentiality provision is purported to prevent (1) publication of complaints

in order to manipulate the electoral process, (2) utilization of a complaint as a

means of retaliation, (3) utilization of a complaint to undermine an ongoing

investigation in a separate matter, (4) utilization of a complaint in an attempt to

influence an non-Commission government decision maker, (5) damage to the

reputation of public officials, and (6) interference with ongoing Commission

investigations.  (See Doc. 16 at 47-62; Doc. 18 at 4-5.)  Unless these interests are both

compelling and narrowly tailored, the statute cannot survive constitutional

and did not in practice, operate to freeze [the plaintiff's] speech before he publicly
aired his message").  In the matter *sub judice*, the precise characterization is largely
academic.  Both a prior restraint on speech and a subsequent penal sanction are
presumptively illegal and must withstand the application of strict scrutiny to
survive judicial review.  See Smith v. Daily Mail Publ'g Co., 443 U.S. 97, 101-02
(1979).

scrutiny.  The court will thus examine each of the state's asserted justifications *seriatim*.

### 1.   **Election Manipulation**

Defendants assert that the confidentiality provision of § 1108(k) is necessary to thwart attempts to manipulate the electoral process.  Specifically, the provision forecloses the filing of complaints for the sole purpose of publicizing the fact of filing and thereby impugning the integrity of the candidate who is the subject of the complaint.  (Doc. 16 at 47-50.)  An individual attempting to manipulate an electoral result in this manner typically files his or her complaint in close proximity to the election.  Contino explained such a scenario as follows:

> Someone files a complaint several days before a hotly contested election. We get the complaint and it goes through [preliminary] review.  Our review takes several days.  It could take up to a week depending on the stack of paper on our desks at the time.  Election time I can tell you it's a stack of papers about three feet high because of the complaints coming in against political opponents.
>
> The person who files the complaint goes out the day before the election, prints up a copy of the complaint, puts it in an electoral brochure, hands it out to all of the people at the polls on election day claiming this person, who is [an] incumbent, is under investigation.  The case I'm talking about, it was a school board election, it was very hotly contested because of school board taxes.
>
> They wanted to go after this particular man.  They filed the complaint.  They printed out literally hundreds, hundreds of these brochures on election day and the day before election day.  We never even had a chance to process the complaint.  The individual loses the election in a close call.  Several days later we process the complaint, it's unjustified, there is no merit to it, it doesn't even meet the threshold to open up a probable cause case.  We dismiss the complaint. . . . I've had

probably seven or eight similar examples in an attempt to manipulate the electoral process.[13]

(Id. at 49-50.)

The court finds that defendants' interest in preventing electoral manipulation is compelling. However, the court also finds that the confidentiality provision cuts too broad a swath of the First Amendment field. Section 1108(k) imposes a blanket prohibition on disclosure irrespective of the disclosure's timing vis-à-vis a forthcoming election. In many instances, however, the publication of filing and an election may be temporally distant; for example, Stilp disclosed his intent to file several months in advance of the closest election. Furthermore, Contino stated that in the majority of cases, the Commission "would know in a matter of probably a week or so" whether a complaint warranted summary

_____

[13] The factual scenario to which Contino referred arose in May 1985 during a school board election in Delaware County, Pennsylvania. (See Def. Hr'g Ex. 2.) Kathleen Neary, who was not a candidate for office, filed a complaint within days of the election. (Id. at 3-4.) She then distributed fliers that recited the substance of her complaint, and that proclaimed, "The State Ethics Commission is investigating whether [the candidate's] actions are improper." (Id. at 3.) The candidate who was the subject of this last-minute complaint lost the election, and the Commission charged Neary with violating the confidentiality provision of the Act. (Id. at 4-5.) Neary thereafter challenged the constitutionality of the Act in the Eastern District of Pennsylvania, resulting in an unreported decision: Neary v. Zimmerman, No. 88-3096 (E.D. Pa. July 10, 1989). (Id. at 5.) In a brief ruling delivered from the bench, our sister court held that "the State's interest in confidentiality of proceedings of the State Ethics Commission is amply supported." (Id. at 17.) This appears to be the sole instance in which the confidentiality provision of § 1108(k) was subject to a constitutional challenge in federal court. Unfortunately, the substantive analysis underlying the Neary court's ruling is brief and it fails to contain any description of the evidence and arguments presented by the parties. Thus, this unreported matter is hardly dispositive in the court's analysis.

dismissal.  (See id. at 83.)  When an election is looming, the Commission may lack time to perform such a review; but in a case akin to Stilp's, the Commission possessed ample time to complete a preliminary review without fear of electoral meddling.  Even Contino appeared to concede that the blanket prohibition was overbroad with respect to the state's interest in preventing manipulation of the democratic process:

| | |
|---|---|
| THE COURT: | What you [are] saying with respect to his question about whether the complaint was true or untrue, is that regardless of [the complaint's veracity] it influences the election and that [is] the problem . . . with disclosures immediately prior to either a general or a primary election? |
| CONTINO: | That's exactly correct, your Honor. |
| THE COURT: | And you [are] unable to make a determination on the merits in a short period of time.  I guess what I [am] not quite clear on is why there would [not] be a less restrictive means of doing that by simply indicating that within a certain period of, that complaints cannot be disclosed within a certain period of time prior to the election, which would give you an opportunity to address the merits of the complaint. |
| CONTINO: | **That would be a remedy for that particular problem**. |

(Id. at 82 (emphasis added)).  This testimony suggests that a more appropriately tailored statute may be one that prohibits publication of filing only when the complaint is filed in close proximity to an election.[14]  As a result, it is reasonably likely that § 1108(k)'s blanket prohibition fails to effectuate the state's compelling interest by way of the least restrictive means.

---

[14] Stilp suggests prohibiting disclosure "for a one-week period prior to election day[, which] would be a more narrowly-tailored means of preventing the kind of 'manipulation' that the Commission" has described.  (Doc. 20 at 14.)

##     2.     **Retaliation**

Defendants assert that the confidentiality provision of § 1108(k) serves to "prevent individuals from using the complaint process as a means of retaliation." (Doc. 18 at 4.)  According to Contino, prohibition on disclosure prevents one who feels victimized by the actions of a public official from filing an ethics complaint simply to requite in conspicuous fashion.  (<u>See</u> Doc. 16 at 56-57.)  Contino provided a recent example of one such instance:

> [W]e had an individual who worked with the state who had been the subject of increasingly progressive discipline from his superiors and eventually was terminated and filed some grievances with the union, but in addition to that filed a number of complaints against the individuals in the chain of command against those public officials and then faxed the complaint that had been filed with the department's secretary and the chief counsels of the units of the departments in order to show the department head and the chief counsel that their employees were under investigation by the ethics commission.
> The complaints were entirely bogus, but the disclosure of that to the officials, you know, caused concern for the officials that they had people working for them that could be . . . under investigation by the ethics commission, but more importantly that they may have done something.  As it turns out[,] the complaints were completely frivolous.

(<u>Id.</u>)  Underlying Contino's testimony is the implicit assumption that complaints filed for retaliatory purposes contain frivolous and unfounded allegations.

Defendants' interest in preventing retaliation is certainly important, but the court is not convinced that it justifies the suppression of political speech.  The First Amendment requires that public officials be prepared to endure a heightened level of criticism—some of which may be entirely baseless—as a necessary consequence of their station in democratic society.  <u>See</u> <u>Sullivan</u>, 376 U.S. at 273.  When an

17

individual levies charges of ethical improprieties with no other purpose than to harass,[15] a public official must demonstrate that he or she is without civil tort remedies before repression of speech is constitutionally permissible. See generally id.; see also Lind v. Grimmer, 30 F.3d 1115, 1120 (9th Cir. 1994) (finding confidentiality provision contained in campaign finance law, which was similar in nature to § 1108(k), to be overbroad when "the State ha[d] not shown that the victim will be without civil tort remedies"). In fact, when pressed on the availability of tort remedies to defend against retaliatory disclosure, Contino was equivocal:

> MARTIN: All right, but if someone actually did suffer injury as a result of a false statement against him or her with respect to adherence to law or violation of law, that individual could bring a lawsuit for that loss, couldn't [] he or she?
>
> CONTINO: I don't know. I guess so. . . . You know, pretty much it's like the bees are out of the jar at that point. I mean, you have to hire a lawyer and you have to go through a legal process when on the other side wouldn't it be better if it just didn't happen[?]

---

[15] When allegations underlying a complaint are meritorious, the very fact of filing may function as political speech. Initiation of an ethics investigation arguably conveys critical implications about the subject state official. See Sullivan, 376 U.S. at 281 (describing the First Amendment's heightened protection for speech concerning "the character and qualifications of candidates" (quoting Coleman v. MacLennan, 98 P. 281, 286 (Kan. 1908))). Such criticism cannot properly be characterized as "retaliatory" in the pejorative sense implied by Contino. Therefore, when allegations of an ethics complaint are meritorious, the state's interest in preventing retaliation is outweighed by countervailing First Amendment concerns.

Additionally, in the case *sub judice*, there is no record evidence of retaliatory intent on the part of Stilp. Indeed, defendants concede that "[t]he information which Stilp wishes to disclose regarding the Commission's procedures is undoubtedly true," (Doc. 18 at 18). Therefore, it is reasonably likely that defendants' interest in preventing retaliation is overbroad as applied to Stilp.

MARTIN:      Okay, so you're expressing a preference that it wouldn't happen?

CONTINO:     It's just a question I pose. . . . Yeah, I mean, I assume they can go hire a lawyer and proceed by way of defamation or liable or slander depending on what format the commentary is in.

(Doc. 16 at 91-92.) Suffice it to say that the inconvenience of seeking legal redress through the courts fails to justify the suppression of free speech.

### 3.  <u>Interference with an Ongoing Investigation</u>

Defendants also assert that the "the confidentiality provision[] prevent[s] individuals from using the complaint process to undermine [an] ongoing investigation of them in another matter." (Doc. 18 at 4.) Contino provided the following example to illustrate that which the prohibition on disclosure attempts to prevent:

> We've got complainants who have attempted to impugn . . . the credibility of ongoing proceedings in another matter using the ethics commission complaint process . . . to give credence to their own position. The case I can think of, it's actually not that long ago, it was in the last couple of years, an individual worked for a state representative and had been terminated by the state representative because of suspicious activity in relation to certain campaign funds that the individual had control over . . . .
>
> The state representative believed that the individual was actually embezzling some of the campaign funds, fired the state employee, and reported it to the local district attorney's office. The state employee who was then under investigation filed a complaint with us, and in an effort to defray attention from the reason that he got terminated alleged that the state representative was requiring him to do political work on government time, which would be a problem under the ethics laws, and that's why he got fired, not for embezzlement, and then had a major press release about the case, tried to bring that to the attention of the news media in order to defer attention from the other issue.
>
> In the end we looked at the complaint, we actually did open up a probable cause stage for that investigation and went in and obtained

19

> what evidence the individual said existed, such as computer hard drives,
> and our forensic people went through the hard drives and there was
> nothing, not one iota of information in support of the complaint.

(Doc. 16 at 54-55.)  In a nutshell, Contino's example is the rare case of a wrongdoer

using an ethics complaint to deflect attention from his or her own misconduct.

The court finds that defendants' interest is compelling but overbroad.

Foremost, defendants  have not demonstrated that civil tort remedies are

ineffective to prevent the obstructive filing described by Contino,[16] see Sullivan, 376

U.S. at 273; see also supra Part II.A.2, nor have they ruled out the possibility of

imposing civil or criminal penalties tailored to punish abuse of process or

obstruction of justice.[17]  Application of existing criminal and civil sanctions would

seemingly allow defendants to restrict speech that is intentionally meddlesome

without limiting legitimate political criticism.  In short, defendants fail to address

the applicability of methods potentially less intrusive to the exercise of First

Amendment rights.  Given the testimony presented thus far, it is reasonably likely

that § 1108(k)'s blanket prohibition on disclosure is inadequately tailored to justify

---

[16] There is no contention that Stilp intends to publicize the fact of filing in order to disrupt a governmental investigation.  Thus, it is reasonably likely that § 1108(k)'s prohibition of publication of filing is overbroad as applied to Stilp.  See supra note 15.

[17] Pennsylvania law makes it unlawful for an individual to "obstruct[], impair[] or pervert[] the administration of law or other governmental function."  18 PA. CONS. STAT. § 5101.  It is unclear why this statute would be ineffective to punish an obstructive filing of the sort described by Contino.

defendants' interest in preventing interference with ongoing governmental investigations.

### 4. Influencing Governmental Decision Making

Defendants claim that "the confidentiality provision[] prevent[s] individuals from filing complaints with the Commission in an attempt to unduly influence the decision of another governmental body." (Doc. 18 at 4-5.) Specifically, defendants contend that § 1108(k) forecloses publication of filing for the sole purpose of exerting political pressure upon a government decision maker. Contino provided the following example:

> I've had a local sewer authority that had determined that it was going to require individuals in a certain neighborhood to ["]tap in["] to the sewer system, started to award contracts to get that process underway. One of the individuals who lived in the neighborhood did not want to be required to ["]tap in["] because it was going to be an expensive process and they filed complaints with the commission, and as the sewer process was going on they publicly disclose that . . . these board members are under investigation by the ethics commission.
>
> It was pretty clear that the sole motivation behind that [filing] was . . . the ["]tap in["] decision that the board had made, and it was an attempt to maybe get another look at that or to bring that to [the] media's attention.

(Doc. 16 at 60-61.)

At this juncture, the court is not convinced that defendants' interest is compelling. In the example cited by Contino, the complainant's motives were obstructionist, and the allegations frivolous. Publication of a false or frivolous complaint is arguably not protected by the First Amendment. See Masson v. New Yorker Magazine, 501 U.S. 496, 510-11 (1991) (explaining that a speaker receives no First Amendment protection when he speaks with knowledge that his speech was

false, or with reckless disregard to its truth or falsity); <u>Kamasinski v. Judicial Review Council</u>, 44 F.3d 106, 111 (2d Cir. 1994) (holding that a state has strong interests in prohibiting frivolous complaints filed to harass the judiciary, and therefore may prohibit disclosure that a complaint was filed levying ethical improprieties by state judges).  However, defendants have failed to demonstrate that § 1108(k)'s blanket disclosure prohibition is the least restrictive means available to prevent the announcement of baseless filings.  <u>See</u> <u>supra</u> Part II.A.2-3 (discussing availability of civil tort and criminal obstruction of justice penalties).

In those instances in which an individual files a complaint charging potentially unethical behavior, publication of the filing may be a reasonable method of exerting political pressure upon the public official in question, as well as those with whom he or she is closely allied.  <u>See</u> <u>supra</u> note 15; <u>see also</u> <u>Sullivan</u>, 376 U.S. at 281 (discussing the First Amendment's heightened protection with respect to a public official's "character").  Open discussion and scrutiny of public corruption has traditionally received expansive protection under the First Amendment.  <u>See, e.g.</u>, <u>Gentile v. State Bar of Nevada</u>, 501 U.S. 1030, 1035 (1991) (extolling the importance of "extensive public scrutiny" and criticism regarding allegations of government corruption, and the heightened protection that accompanies "dissemination of information relating to alleged governmental misconduct"); <u>Butterworth</u>, 494 U.S. at 632 (stating that state officials typically cannot punish publication of truthful information regarding matters of public significance); <u>Providence Journal Co. v. Newton</u>, 723 F. Supp. 846, 852 (D.R.I. 1989) (invalidating confidentiality provision

similar to § 1108(k) and holding that "speech by a citizen charging government officials with breach of a legislatively sanctioned code of official conduct is political speech accorded the greatest protection available under the First Amendment"). In order for § 1108(k)'s disclosure prohibition to survive as written, defendants must show that their interest is compelling not only when the complaint is frivolous, but also when the allegations are meritorious. They have not made such a showing on the present record.

### 5. **Reputational Damage**

Defendants claim that § 1108(k)'s disclosure prohibition serves to "prevent [] damage to the reputation of government officials where the allegations [a]re unfounded." (Doc. 18 at 4.) However, defendants concede that this interest is not compelling under New York Times v. Sullivan and its progeny. (See id. at 4 n.6.) The court agrees. "[A]bsent exceptional circumstances, reputational interests alone cannot justify the proscription of truthful speech." Butterworth, 494 U.S. at 634. Section 1108(k) makes no distinction between the truthful and the untruthful, the frivolous and the meritorious. Hence, it fails to vindicate this governmental interest.

### 6. **Interference with Ongoing Commission Investigations**

The final justification raised by defendants concerns the Commission's interest in "carry[ing] out investigations more effectively." (Doc. 18 at 4.) Defendants explain that, during the early stages of an investigation, confidentiality

promotes greater cooperation among witnesses and interested parties.  (See Doc. 16

at 57.)  Contino testified that it is

> difficult to conduct these kinds of investigations under the scrutiny of
> the public eye simply because people tend not to want to talk to ethics
> commission investigators if everybody knows they're out there.
>
> If we go into a governmental unit and want to interview
> individuals who work for public officials that we're investigating and
> who are their employees and bosses, they're less likely to talk to us if
> everybody knows we're there and everybody knows it's us . . . . So we try
> to conduct our investigations while we're doing them under the radar.

(Id.)  Furthermore, although the Commission has subpoena power, it lacks the

authority to assemble a grand jury, to issue or apply for a search warrant, and to

immunize witnesses.  (See id. at 88.)  In short, Commission investigators rely

heavily on voluntary cooperation.

The court finds that defendants have stated a compelling interest, to wit:

establishing an environment in which the Commission may effectively investigate

allegations of ethical improprieties without unwarranted interference.  However,

defendants have not demonstrated that blanket prohibition of publication of filing

is the least restrictive means available to protect the integrity of on-going

investigations.  Arming the Commission with additional investigative powers would

likely resolve these evidence-gathering concerns without impairing First

Amendment rights.[18]  In a factually analogous scenario, one circuit court has

observed, "The vast majority of deliberative bodies undertake investigations with

full exposure to the public, and with no apparent ill effects."  Lind, 30 F.3d at 1121

(rejecting assertion that blanket confidentiality is necessary to investigate breaches

in campaign finance law).  Defendants overlook the availability of additional law

enforcement tools to satisfy their investigative obligations.  It is not enough to

simply acknowledge the dearth of evidence-gathering apparatus with which the

Commission is accoutered; defendants must establish that even with comparable

investigative tools, defendants would be unable to gather the evidence necessary to

effectively investigate potential ethics improprieties.  At this stage in the litigation,

---

[18] During Contino's cross examination, Stilp's counsel probed this line of inquiry as follows:

MARTIN:     [Y]ou said once it becomes known that an investigation is ongoing that people may be less likely to talk to investigators who may be trying to gather information, but isn't that the same challenge that a district attorney or the attorney general's office faces if they send out an investigator quietly . . . ?

CONTINO:   They may, but they also can bring a witness before the grand jury and keep his lawyer outside the room in most cases and . . . the whole process is secret. . . . They have, you know, the authority to issue search warrants and go in and scarf things up before anybody know[s] what[] is happening.  They have the ability to immunize witnesses and get them out of situations that they might find themselves in. . . . We're an administrative agency working with administrative tools. . . .

MARTIN:     Okay, but if you were afforded similar tools, grants of immunity, grand jury, search warrants, that would remove that concern about impeding investigations?

CONTINO:   It very well may, but we don't have them.

(Doc. 16 at 87-89.)

the court is unable to conclude that § 1108(k)'s blanket disclosure prohibition is the least restrictive means necessary to realize the Commission's legitimate evidence-gathering concerns.

**＊＊＊＊**

Section 1108(k) is a content-based restriction on speech that is presumptively illegal. Defendants assert six justifications in support of the statute. Several of these assertions appear compelling, but the evidence presented thus far fails to justify § 1108(k)'s blanket prohibition on disclosure of the fact that a complaint was filed with the Commission. As a result, Stilp has demonstrated a reasonable probability that he will succeed on the merits of his First Amendment challenge. See BP Chems., 229 F.3d at 264 (explaining that the likelihood of success inquiry requires examination of the merits of the underlying cause of action).

In addition, the court is aware of three federal decisions in which confidentiality provisions similar to § 1108(k) were invalidated on First Amendment grounds. See Lind, 30 F.3d 1115 (holding unconstitutional the confidentiality provision applicable to investigations conducted by Hawaii's campaign spending commission); Providence Journal Co., 723 F. Supp. 846 (invalidating confidentiality provision of Rhode Island Ethics Commission); Doe v. Gonzalez, 723 F. Supp. 690 (S.D. Fla. 1988) (finding confidentiality provision of Florida State Ethics Commission unconstitutional). These decisions do not bind this court, but the force of their reasoning, applied to confidentiality provisions comparable to § 1108(k),

provides further evidence that Stilp has demonstrated a reasonable likelihood of success on the merits. In order to prevail as this litigation continues, it is incumbent upon defendants to distinguish <u>Lind</u>, <u>Providence Journal</u>, and <u>Doe</u>, and to explain why the First Amendment analyses of these federal courts are inapplicable to the court's review of § 1108(k).

### B. <u>Irreparable Injury</u>

Irreparable injury is harm of such an irreversible character that prospective judgment would be inadequate to make the moving party whole. <u>See</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 163 (3d Cir. 1997); <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 801 (3d Cir. 1989). The mere risk of injury is not sufficient to meet this standard. Rather, the moving party must establish that the harm is imminent and probable. <u>Anderson</u>, 125 F.3d at 164; 11A WRIGHT ET AL., <u>supra</u>, § 2948.1. Harm that may be contained effectively only through immediate injunctive relief is properly deemed "irreparable." <u>Instant Air Freight</u>, 882 F.2d at 801.

Infringement upon an individual's First Amendment rights, for even abbreviated periods of time, constitutes irreparable injury. <u>Swartzwelder</u>, 297 F.3d at 241. In the instant matter, the court has determined that Stilp is reasonably likely to evince violations of his First Amendment rights. Defendants in fact concede that "Stilp can meet the second prong [of the preliminary injunction analysis] if he can show that he is likely to succeed on the merits." (Doc. 18 at 5

n.7.)  Therefore, the court concludes that Stilp has established the element of irreparable harm.

### C.    Harm to the Nonmovant

In order to determine whether granting injunctive relief would result in greater harm to the nonmovant, the court must examine the terms of the proposed injunction, the respective positions of the parties, and engage in an assessment of the ramifications of injunctive relief.  See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 596-97 (3d Cir. 2002); Pittsburgh Newspaper Printing Pressmen's Union No. 9 v. Pittsburgh Press Co., 479 F.2d 607, 609-10 (3d Cir. 1973).  If the potential harm to the nonmovant outweighs the potential benefits bestowed upon the movant, injunctive relief should generally be denied.  See Novartis Consumer Health, 290 F.3d at 596-97.  Stated succinctly, the question is whether the injunction would do more harm than good.

In the instant matter, enjoinment of § 1108(k)'s proscription of publication of filing is unlikely to cause more harm than good.  The majority of the Act will remain in effect, as will those aspects of § 1108(k) unrelated to disclosure of the fact of filing. Defendants also concede this point, acknowledging that it cannot "constitute harm to the defendants to uphold the statutory provision" given Stilp's demonstrated likelihood of success on the merits.  (Doc. 18 at 5 n.7.)  Hence, the court finds that Stilp has met his burden to show that preliminary injunctive relief will not disproportionately harm defendants.

**D.    Public Interest**

Among the more nebulous concepts of equitable relief is the public interest factor of the injunction analysis.  11A WRIGHT ET AL., supra, § 2948.4.  This factor requires the court to look beyond the parties to gauge the injunction's potential impact on the populace.  See Novartis Consumer Health, 290 F.3d at 596-97. Specific, tangible effects on third parties should constitute the focus of the court's determination.  See Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 883-84 (3d Cir. 1997); United States v. Ingersoll-Rand Co., 320 F.2d 509, 524 (3d Cir. 1963).  There is undoubtedly a strong public interest in preserving the free flow of political criticism and debate in the Commonwealth.  Defendants acknowledge this public interest, stating that "it cannot be in the interest of the public" to tolerate the continued operation of a statute that is likely unconstitutional.  (Doc. 18 at 5 n.7.)

**E.    Security**

Federal Rule of Civil Procedure 65(c) states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c).  Neither party has addressed the bond requirement in this case; Stilp has offered no particular evidence of undue financial hardship, nor have defendants proffered evidence of the extent to which an injunction will occasion their financial loss.  The absence of such evidence naturally renders it somewhat difficult to fulfill the court's responsibility to "require the successful applicant to

post adequate security." Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 103 (3d Cir. 1988); see also Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 210 (3d Cir. 1990) (explaining that the Third Circuit Court of Appeals "has interpreted the bond requirement very strictly"); Pa. Family Inst., Inc. v. Celluci, 489 F. Supp. 2d 447, 458-59 (E.D. Pa. 2007) (citing Frank's GMC Truck Ctr. and stating that the posting requirement is not discretionary). Although the amount of the bond is left to the court's discretion, Frank's GMC Truck Ctr., 847 F.2d at 103, Rule 65(c) requires the movant to post some security in order to "'deter[] rash applications for interlocutory orders [by] causing plaintiff to think carefully beforehand.'" Hoxworth, 903 F.2d at 211 (alteration in original) (quoting Instant Air Freight Co., 882 F.2d at 804).

Stilp seeks prospective relief to protect an important federal right and he ostensibly pursues this litigation in the public's interest as well as his own. Defendants stand to suffer no direct pecuniary loss as a consequence of the injunction. Therefore, the court will exercise its discretion under Rule 65(c) and require Stilp to post a nominal bond of $250 before the preliminary injunction will issue. The court finds that this amount will protect the parties' respective interests without imposing an undue hardship upon a plaintiff seeking vindication of his First Amendment right to freedom of speech.

**III.** **Conclusion**

For the reasons set forth above, the court will enjoin enforcement of the

prohibition of disclosure provision of § 1108(k) pending further hearing.

An appropriate order follows.

     S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     June 29, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GENE STILP,** | : | **CIVIL ACTION NO. 1:09-CV-0524** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN J. CONTINO** | : | |
| **and THOMAS W. CORBETT, JR.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 29th day of June, 2009, upon consideration of plaintiff's

motion (Doc. 2) for preliminary injunction, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.   Plaintiff's motion (Doc. 2) for preliminary injunction is GRANTED in part and DENIED in part as follows:

     a.   The motion (Doc. 2) is GRANTED insofar as 65 PA. CONS. STAT. § 1108(k) prohibits a complainant from publicizing the fact that he or she has filed a complaint with the Pennsylvania State Ethics Commission. Defendants are preliminarily ENJOINED from enforcing § 1108(k) against a complainant that discloses the fact that he or she filed a complaint with the Commission.

     b.   The motion (Doc. 2) is DENIED in all other respects.

2.	The preliminary injunction described in Paragraph 1 shall not issue until plaintiff posts a bond in the amount of $250.  See FED. R. CIV. P. 65(c).

3.	A pretrial scheduling order shall issue by future order of court.


　　　S/ Christopher C. Conner　　
CHRISTOPHER C. CONNER
United States District Judge